**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BLUE SKY INNOVATION GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-129-MN |
| | ) | |
| FORCOME CO., LTD., AMERICAN | ) | **JURY TRIAL DEMANDED** |
| OUTDOOR BRANDS, INC., and THE | ) | |
| SAUSAGE MAKER, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT FORCOME CO., LTD.'S ANSWER TO**
**FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**

Defendant Forcome Co., Ltd. ("Forcome Hong Kong"), for its answer and defenses to Plaintiff Blue Sky Innovation Group, Inc.'s ("Blue Sky") First Amended Complaint, states as follows:

**NATURE OF THE ACTION**

1.      In response to Paragraph 1 of the First Amended Complaint, Forcome Hong Kong admits that Blue Sky brought this design patent infringement action against Forcome Hong Kong and two other Defendants—American Outdoor Brands, Inc. ("AOB) and The Sausage Maker, Inc. ("TSM"). Forcome Hong Kong denies that Forcome Hong Kong has infringed or infringes Blue Sky's U.S. Patent No. D831,080, or that Blue Sky is entitled to any relief from Forcome.

2.      In response to Paragraph 2 of the First Amended Complaint, Forcome Hong Kong admits Blue Sky also asserts claims for breach of contract, tortious interference, and misappropriation of trade secrets against Forcome Hong Kong. Forcome Hong Kong otherwise denies the remaining allegations in Paragraph 2 of the First Amended Complaint, or that Blue Sky is entitled to any relief from Forcome Hong Kong.

## THE PARTIES

3.      Upon information and belief, Forcome Hong Kong admits that the allegations in Paragraph 3 of the First Amended Complaint.

4.      Forcome Hong Kong admits the allegations in Paragraph 4 of the First Amended Complaint.

5.      Upon information and belief, Forcome Hong Kong admits the allegations in Paragraph 5 of the First Amended Complaint.

6.      Upon information and belief, Forcome Hong Kong admits the allegations in Paragraph 6 of the First Amended Complaint.

## JURISDICTION AND VENUE

7.      Forcome Hong Kong admits the allegations in Paragraph 7 of the First Amended Complaint.

8.      Forcome Hong Kong admits the allegations in Paragraph 8 of the First Amended Complaint.

9.      Forcome Hong Kong denies the allegations Paragraphs 9 through 11 the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

10.     In response to Paragraph 12 of the First Amended Complaint, Forcome Hong Kong does not contest this Court's exercise of personal jurisdiction over Forcome Hong Kong, and otherwise denies Blue Sky's characterizations of the facts alleged.

11.     In response to Paragraph 13 of the First Amended Complaint, Forcome Hong Kong does not contest this Court's exercise of personal jurisdiction over Forcome Hong Kong, and otherwise denies the remaining allegations in Paragraph 13.

12.     Forcome Hong Kong denies the allegations in Paragraphs 14 through 17 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

13.     In response to Paragraph 18 of the First Amended Complaint, Forcome Hong Kong does not contest the venue of this action, and otherwise denies Blue Sky's characterizations of the facts alleged.

14.     Forcome Hong Kong denies the allegations in Paragraph 19 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

## FACTUAL BACKGROUND

15.     Forcome Hong Kong denies the allegations in Paragraphs 20 to 23 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

16.     Forcome Hong Kong denies the allegations in Paragraph 24 of the First Amended Complaint.

17.     In response to Paragraph 25 of the First Amended Complaint, Forcome Hong Kong admits that it is a trading company that specializes in exporting outdoor products, tools, and equipment and denies the remaining allegations therein.

18.     Forcome Hong Kong denies the allegations in Paragraphs 26 and 27 of the First Amended Complaint.

19.     In response to Paragraph 28 of the First Amended Complaint, Forcome Hong Kong admits that Exhibit B to the First Amended Complaint appears to be the Non-Disclosure and Exclusivity Agreement (the "NDA") between Blue Sky and Forcome (Shanghai) Co., Ltd. ("Forcome Shanghai"), and otherwise denies the remaining allegations in Paragraph 27 of the First

Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

20.     In response to Paragraph 29 of the First Amended Complaint, Forcome Hong Kong admits that the attached NDA appears to contain an exclusivity clause, and otherwise denies the remaining allegations in Paragraph 29 of the First Amended Complaint.

21.     Upon information and belief, Forcome Hong Kong admits the allegations in Paragraph 30 of the First Amended Complaint.

22.     In response to Paragraph 31 of the First Amended Complaint, Forcome Hong Kong admits that the attached NDA appears to contain a confidentiality clause, and otherwise denies the remaining allegations in Paragraph 31 of the First Amended Complaint.

23.     Forcome Hong Kong denies the allegations in Paragraphs 32 through 34 of the First Amended Complaint.

24.     In response to Paragraph 35 of the First Amended Complaint, Forcome Hong Kong admits that Exhibit C appears to be a copy of the Cooperation Agreement between Blue Sky and Forcome Shanghai, and otherwise denies the remaining allegations in Paragraph 35 of the First Amended Complaint.

25.     In response to Paragraph 36 of the First Amended Complaint, Forcome Hong Kong admits that the attached Cooperation Agreement appears to contain an exclusivity clause, and otherwise denies the remaining allegations in Paragraph 36 of the First Amended Complaint.

26.     In response to Paragraph 37 of the First Amended Complaint, Forcome Hong Kong admits that Paragraph 37 quotes a portion of the attached Cooperation Agreement which appears to be entered between Blue Sky and Forcome Shanghai, and denies that the clause, or the Cooperation Agreement that contains it, is binding upon Forcome Hong Kong.

27.     In response to Paragraph 38 of the First Amended Complaint, Forcome Hong Kong admits that the attached Cooperation Agreement appears to contain a confidentiality clause, and otherwise denies the remaining allegations in Paragraph 38 of the First Amended Complaint.

28.     In response to Paragraph 39 of the First Amended Complaint, Forcome Hong Kong admits that Paragraph 39 quotes a portion of the attached Cooperation Agreement which appears to be entered between Blue Sky and Forcome Shanghai, and denies that the clause, or the Cooperation Agreement that contains it, is binding upon Forcome Hong Kong.

29.     Forcome Hong Kong denies the allegations in Paragraphs 40 through 46 of the First Amended Complaint.

30.     In response to Paragraphs 47 through 49 of the First Amended Complaint, upon information and belief, Forcome Hong Kong admits that Blue Sky entered into certain agreements with Yuchi for the manufacture of grinders to be sold to Cabela's and Bass Pro, during the term of the NDA and Cooperation Agreement between Blue Sky and Forcome Shanghai. Forcome Hong Kong otherwise denies the remaining allegations in Paragraphs 47 through 49 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

31.     In response to Paragraph 50 of the First Amended Complaint, Forcome Hong Kong admits that in or around May 2020, Blue Sky terminated its Cooperation Agreement with Forcome Shanghai as a result of Blue Sky's new business relationship with Yuchi.

32.     Forcome Hong Kong denies the allegations in Paragraphs 51 through 54 of the First Amended Complaint.

33.     In response to Paragraph 55 of the of the First Amended Complaint, upon information and belief, Forcome Hong Kong admits that Blue Sky and Yuchi moved forward with

their relationship, notwithstanding Blue Sky's obligations under the NDA and Cooperation Agreement with Forcome Shanghai and any business relationship with Forcome Hong Kong, and further denies that any of Forcome Hong Kong's conduct was improper.

34.     Forcome Hong Kong denies the allegations in Paragraph 56 of the First Amended Complaint.

35.     Forcome Hong Kong denies the allegations in Paragraphs 57 and 59 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

36.     Forcome Hong Kong denies the allegations in Paragraph 60 of the First Amended Complaint.

37.     Forcome Hong Kong denies the allegations in Paragraphs 61 through 65 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

38.     In response to Paragraph 66 of the of the First Amended Complaint, Forcome Hong Kong admits that it is presently exporting to the United States meat grinders that are being offered for sale and sold by AOB under the brand name Meat! Your Maker (the "AOB Products") and denies the remaining allegations in Paragraph 66.

39.     In response to Paragraph 67 of the First Amended Complaint, Forcome Hong Kong states that it currently lacks knowledge or information sufficient to form a belief as to whether Paragraph 67 contains a side-by-side comparison of the claimed design of the '080 Patent and the design of the AOB Products. Forcome Hong Kong further denies that the AOB Products have infringed or infringe any patent owned by Blue Sky.

40.     Forcome Hong Kong denies the allegations in Paragraphs 68 through 71 of the First Amended Complaint.

41.     In response to Paragraph 72 of the of the First Amended Complaint, Forcome Hong Kong admits that it is presently exporting to the United States meat grinders that are being offered for sale and sold by Sausage Maker under the brand name The Sausage Maker (the "TSM Products") and denies the remaining allegations in Paragraph 72.

42.     In response to Paragraph 73 of the First Amended Complaint, Forcome Hong Kong states that it currently lacks knowledge or information sufficient to form a belief as to whether Paragraph 73 contains a side-by-side comparison of the claimed design of the '080 Patent and the design of the TSM Products.  Forcome Hong Kong further denies that the TSM Products have infringed or infringe any patent owned by Blue Sky.

43.     Forcome Hong Kong denies the allegations in Paragraphs 74 through 78 of the First Amended Complaint.

## COUNT I
### Claim for Design Patent Infringement of U.S. Patent No. D831,080 under 35 U.S.C. § 271
### (Against Defendants Forcome Hong Kong and AOB)

44.     In response to Paragraph 79 of the First Amended Complaint, Forcome Hong Kong incorporates the foregoing paragraphs of this Answer as if fully rewritten herein.

45.     Forcome Hong Kong denies the allegations in Paragraphs 80 through 88 of the First Amended Complaint.

## COUNT II
### Claim for Design Patent Infringement of U.S. Patent No. D831,080 under 35 U.S.C. § 271
### (Against Defendants Forcome Hong Kong and Sausage Maker)

46.     In response to Paragraph 89 of the First Amended Complaint, Forcome Hong Kong incorporates the foregoing paragraphs of this Answer as if fully rewritten herein.

47.     Forcome Hong Kong denies the allegations in Paragraphs 90 through 98 of the First Amended Complaint.

## COUNT III
**Claim for Breach of the Cooperation Agreement Exclusivity Provision**
**(Against Defendant Forcome Hong Kong)**

48.     In response to Paragraph 99 of the First Amended Complaint, Forcome Hong Kong incorporates the foregoing paragraphs of this Answer as if fully rewritten herein.

49.     Forcome Hong Kong denies the allegations in Paragraphs 100 through 112 of the First Amended Complaint.

## COUNT IV
**Claim for Breach of the Cooperation Agreement Confidentiality Provision**
**(Against Defendant Forcome Hong Kong)**

50.     In response to Paragraph 113 of the First Amended Complaint, Forcome Hong Kong incorporates the foregoing paragraphs of this Answer as if fully rewritten herein.

51.     Forcome Hong Kong denies the allegations in Paragraphs 114 through 132 of the First Amended Complaint.

## COUNT V
**Claim for Tortious Interference**
**(Against Defendant Forcome Hong Kong)**

52.     In response to Paragraph 133 of the First Amended Complaint, Forcome Hong Kong incorporates the foregoing paragraphs of this Answer as if fully rewritten herein.

53.     In response to Paragraphs 134 and 135 of the First Amended Complaint, Forcome Hong Kong admits that Blue Sky has relationships with Yuchi and Bass Pro and denies the remaining allegations therein.

54.     Forcome Hong Kong denies the allegations in Paragraphs 136 through 141 of the First Amended Complaint.

55.     Forcome Hong Kong denies the allegations in Paragraphs 142 through 146 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

56.     Forcome Hong Kong denies the allegations in Paragraphs 147 and 148 of the First Amended Complaint.

**COUNT VI**
**Claim for Violation of the Ohio Trade Secrets Act**
**(Against Defendant Forcome Hong Kong)**

57.     In response to Paragraph 149 of the First Amended Complaint, Forcome Hong Kong incorporates the foregoing paragraphs of this Answer as if fully rewritten herein.

58.     Forcome Hong Kong denies the allegations in Paragraph 150 of the First Amended Complaint.

59.     Forcome Hong Kong denies the allegations in Paragraphs 151 and 152 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

60.     Forcome Hong Kong denies the allegations in Paragraph 153 of the First Amended Complaint.

61.     In response to Paragraph 154 of the First Amended Complaint, Forcome Hong Kong admits that the Cabela Carnivore Grinder designs are economically valuable, denies that Blue Sky is the sole owner of the designs, and further denies the remaining allegations in Paragraph 154 of the First Amended Complaint.

62.     In response to Paragraph 155 of the First Amended Complaint, Forcome Hong Kong admits that the Cabela Carnivore Grinder designs are valuable to any competitors of Blue Sky and Forcome Hong Kong.

63.     Forcome Hong Kong denies the allegations in Paragraph 156 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

64.     Forcome Hong Kong denies the allegations in Paragraph 157 of the First Amended Complaint.

65.     In response to Paragraph 158 of the First Amended Complaint, Forcome Hong Kong admits that the Cabela Carnivore Grinder designs and related confidential information, which are the result of Blue Sky and Forcome Shanghai's collective work, constitute trade secrets under the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code Ann. § 1333.61. Forcome Hong Kong denies that Blue Sky is the sole owner of any Cabela Carnivore Grinder-related trade secrets.

66.     Forcome Hong Kong denies the allegations in Paragraphs 159 through 165 of the First Amended Complaint.

**COUNT VII**
**Claim for Violation of the Defend Trade Secrets Act**
**(Against Defendant Forcome Hong Kong)**

67.     In response to Paragraph 166 of the First Amended Complaint, Forcome Hong Kong incorporates the foregoing paragraphs of this Answer as if fully rewritten herein.

68.     Forcome Hong Kong denies the allegations in Paragraph 167 of the First Amended Complaint.

69.     Forcome Hong Kong denies the allegations in Paragraph 168 of the First Amended Complaint for lack of knowledge or information sufficient to form a belief as to their truth.

70.     Forcome Hong Kong denies the allegations in Paragraphs 169 through 171 of the First Amended Complaint.

71.     In response to Paragraph 172 of the First Amended Complaint, Forcome Hong Kong admits that the Cabela Carnivore Grinder designs are valuable to any competitors of Blue Sky, as well as Forcome Hong Kong.

72.     In response to Paragraph 173 of the First Amended Complaint, Forcome Hong Kong admits that the Cabela Carnivore Grinders and related confidential information constitute trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3), and denies that Blue Sky is the sole owner of any such trade secrets.

73.     Forcome Hong Kong denies the allegations in Paragraphs 174 through 180 of the First Amended Complaint.

## PRAYER FOR RELIEF

The remaining paragraphs of the First Amended Complaint contain Blue Sky's prayer for relief, in response to which Forcome Hong Kong that Blue Sky is entitled the requested relief, or to any other relief, from Forcome Hong Kong.

## DEFENSES

Forcome Hong Kong's Defenses are listed below. Forcome Hong Kong reserves the right to amend its answer to add additional Defenses consistent with the facts discovered in this action.

## FIRST DEFENSE

Forcome Hong Kong has not infringed and does not infringe, under any theory of infringement (including directly or indirectly) any valid claim of the '080 Patent.

## SECOND DEFENSE

The '080 Patent is invalid for failure to meet the requirements of patentability found in 35 U.S.C. §§ 171, 102, 103 and/or 112 because, among other reasons, the alleged design is taught by, suggested by, anticipated by and/or obvious in view of the prior art, is indefinite, is not enabled, and/or lacks written description.

**THIRD DEFENSE**

Blue Sky is not entitled to injunctive relief because any alleged injury is not immediate, is not irreparable, and an adequate remedy at law exists.

**FOURTH DEFENSE**

Blue Sky's claims are barred by one or more of the equitable doctrines of laches, estoppel, acquiescence, waiver, and unclean hands.

**FIFTH DEFENSE**

All or part of Blue Sky's claims are barred by the statute of limitations.

**SIXTH DEFENSE**

Blue Sky fails to state a claim upon which relief may be granted.

**SEVENTH DEFENSE**

Blue Sky's claims fail to the extent that Blue Sky failed to name the right party or to join an indispensable party.

**<u>COUNTERCLAIMS</u>**

**PARTIES**

1.     Forcome Co., Ltd. ("Forcome Hong Kong") is a Hong Kong corporation with its principal place of business located at Building 109, No. 255, South Sizhuan Road, Shanghai 201612 China.

2.     American Outdoor Brands, Inc. ("AOB") is a Delaware corporation with its principal place of business located at 1800 N Route Z, Columbia, Missouri 65202.

3.     The Sausage Maker, Inc. ("TSM") is a New York corporation with its principal place of business located at 1500 Clinton St., Buffalo, NY 14206.

4.      Blue Sky states in Paragraph 3 of its First Amended Complaint that "Blue Sky is an Ohio Corporation with its principal place of business at 2931 Abbe Rd. N, Sheffield Lake, Ohio 44054."

## JURISDICTION AND VENUE

5.      This is a civil action for declarations that the '080 Patent, and each and every claim thereof, is invalid and not infringed pursuant to the Patent Laws of the United States, 35 U.S.C. § 101, et seq.

6.      Accordingly, subject matter jurisdiction of this Court for these counterclaims exists under the Federal Declaratory Judgment Act, Title 28, United States Code §§ 2201 and 2202, and under Title 28, United States Code §§ 1331, 1332, 1338(a)-(b), and 1367.

7.      An actual, substantial, and continuing justiciable controversy exists between Forcome Hong Kong, AOB, and TSM (collectively, the "Defendants") and Blue Sky with respect to which Defendants require a declaration of their rights by this Court. Specifically, the controversy relates to the invalidity and noninfringement of the '080 Patent.

8.      The claims for declaratory judgment of invalidity and noninfringement are compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure.

9.      This Court has supplemental jurisdiction over Forcome Hong Kong's state-law counterclaim against Blue Sky pursuant to 28 U.S.C. § 1367(a) because these claims are so related Forcome Hong Kong's patent invalidity and noninfringement counterclaims that they form part of the same case or controversy.

10.      This Court has supplemental jurisdiction over Forcome Hong Kong's state-law counterclaim against Blue Sky also because these counterclaims are compulsory counterclaims in relation to Blue Sky's state-law claims against Forcome Hong Kong.

11.     This Court has personal jurisdiction over Blue Sky. By filing its Complaint and First Amended Complaint in this case, Blue Sky has consented to personal jurisdiction in this Court for the adjudication of disputes with Defendants regarding the '080 patent and related state-law issues.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b).

## STATEMENT OF FACTS

### A.     Forcome Hong Kong and Affiliated Companies

13.     Forcome Hong Kong and several other affiliated companies (collectively, "Forcome Group") are a group of companies that specialize in designing, manufacturing and selling outdoor products, tools, and equipment.

14.     As part of the Forcome Group, Forcome Shanghai Co., Ltd. ("Forcome Shanghai") is a corporation organized under the laws of the People's Republic of China with its principal place of business located at Building 109, No. 255, South Sizhuan Road, Shanghai 201612, China.

15.     As part of the Forcome Group, Forcome (Qingdao) Co., Ltd. ("Forcome Qingdao") is a corporation organized under the laws of the People's Republic of China and is headquartered in Qingdao, China.

16.     Forcome Qingdao specializes in developing and manufacturing outdoor products, tools, and equipment.

17.     Forcome Qingdao supplies the products it developed and manufactured to Forcome Shanghai, which specializes in marketing and selling such products, providing associated customer services, and developing new business opportunities.

18.     For Forcome Group's products sold overseas, for example, to the United States, Forcome Hong Kong interfaces with these customers overseas and receives purchase orders and payments from them.

19.     Forcome Hong Kong, Forcome Shanghai and Forcome Qingdao are two separate but affiliated corporations in that the sole owner of Forcome Hong Kong is also the majority owner of Forcome Shanghai and Forcome Qingdao.

20.     Contracts exist among Forcome Qingdao, Forcome Shanghai and Forcome Hong Kong to govern their respective rights and obligations, such as the transfer of products from one company to another before such products are ultimately sold to customers outside the Forcome Group.

**B.     Cooperation Between Forcome Shanghai and Blue Sky**

21.     In or around October 2012, Forcome Shanghai participated in a trade show in Hong Kong displaying products such as meat grinders and slicers designed and produced by the Forcome Group.

22.      Jeffrey Palese, President of Blue Sky, also attended this trade show, talked with Forcome Shanghai's representatives, and showed his interest in the Forcome Group products.

23.     Shortly thereafter, Mr. Palese and representatives of Forcome Shanghai met again at the China Import and Export Fair, also known as the Canton Fair.

24.     Mr. Palese expressed that he was very impressed by Forcome Shanghai's knowledge of the industry of outdoor products and equipment.

25.     These two meetings led to a visit by Mr. Palese to Forcome Shanghai's headquarters in Shanghai later that year.

26.     After meeting Forcome Shanghai's President, David Wang, and learning that Forcome Shanghai had over a decade of experience in the outdoor equipment industry, particularly that the entire Forcome Group was very experienced in developing and manufacturing meat grinders and slicers, Mr. Palese expressed his intention to cooperate with Forcome Group.

27.     Toward that end, in or around May 2013, Blue Sky and Forcome Shanghai first entered into a Non-Disclosure and Exclusivity Agreement for the joint development of certain products for Cabela's (the NDA").

28.     Cabela's is an American retailer that specializes in hunting, fishing, boating, camping, shooting, and other outdoor recreation merchandise.

29.     Attached as **Exhibit 1** is a true and correct copy of the NDA.

30.     The NDA contained a mutual exclusivity clause which on the one hand, prohibited Forcome Shanghai from selling the specified exclusive products and other similar products to any party other than Blue Sky and Cabela's, and on the other hand, required that Forcome Shanghai be the sole manufacturer for the exclusive products. Exhibit 1, § 2.

31.     The NDA also contained a confidentiality clause binding upon both Blue Sky and Forcome Shanghai ("Confidentiality Clause of the NDA").  *Id.*, § 6.

32.     The Confidentiality Clause of the NDA prohibits one party from disclosing or using products, customers, marketing data, methods and related items (defined as the "Confidential Information") without the prior written consent of the other party in contravention of the purpose of the exclusive business relationship served by the NDA.  *See id.*

33.     However, with respect to Forcome Shanghai, the Confidentiality Clause of the NDA provided, "[Forcome Shanghai] acknowledges that all information regarding its proposed

business relationship with BLUESKY AND CABELAS shall be deemed Confidential Information *except to the extent that such information falls within the exhibit A*." *Id.*, § 6 (emphasis added).

34.     Thus, the Confidentiality Clause of the NDA specifically carved out an exception to confidentiality for Forcome Shanghai with respect to information failing within Exhibit A.

35.     Exhibit A to the NDA lists nine products for which Forcome Shanghai and Blue Sky agreed to work together, including various meat grinders with cooling system, and any other projects which Forcome Shanghai developed with Blue Sky for Cabela's "included in the exclusive range." *Id.*, Exhibit A.

36.     The Confidentiality Clause of the NDA further provides that "[i]n the event of a breach of this Agreement, one party will pay to the other party attorney's fees and other costs and expenses incurred in connection with the enforcement of any provisions of this Agreement." *Id.*, § 6.

37.     Subsequently, in or about September 2014, Blue Sky and Forcome Shanghai entered into a Cooperation Agreement (the "Cooperation Agreement") under which Blue Sky and Forcome Shanghai would work together to develop certain COOL-TEK meat grinders to be supplied to Cabela's.

38.     Upon information and belief, these COOL-TEK meat grinders bear the name of Carnivore (the "Cabela Carnivore Grinders").

39.     Attached as **Exhibit 2** is a true and correct copy of the Cooperation Agreement.

40.     The Cooperation Agreement also contained a mutual exclusivity clause which on the one hand, required Forcome Shanghai to sell the specified products or other similar products exclusively to Blue Sky and on the other hand, provided that Forcome Shanghai shall be the sole manufacturer for the exclusive products. Exhibit 2, § 2.

41.    The Cooperation Agreement's exclusivity clause reads as follows:

2.    Exclusivity. FORCOME agrees that it will exclusively sell the identified product in Exhibit A after the date hereof (collectively, the "Exclusive Products") to BLUESKY and that FORCOME will not sell the Exclusive Products, or similar exclusive products to anyone in the world. And the parties acknowledge and agree that FORCOME shall be the sole manufacturer for the exclusive products unless termination is deemed necessary to due to reason in paragraph 6 of this agreement.

Per the request of Cabela's Management, during the cooperation period of BlueSky/Cabela's purchasing Commercial Grinders from Forcome, FORCOME agrees that it will not manufacture, sell or distribute any similar commercial grinders, in the U.S. or Canadian market that will compete against the commercial line of meat grinders that Cabela's and BLUESKY are purchasing from FORCOME.

*Id.*, § 2 (the "Exclusivity Clause of the Cooperation Agreement").

42.    The Cooperation Agreement also contained a confidentiality clause binding on both

Blue Sky and Forcome Shanghai. *Id.*, § 7.

43.    The Cooperation Agreement's confidentiality clause reads as follows:

7. Confidentiality.    In connection with the business between BLUESKY, CABELAS and FORCOME, any one of party which may have access to confidential information or proprietary information of or regarding the other party, including, without limitation, products, Customers, marketing data, methods and related items (the "Confidential Information") agrees to treat the Confidential Information as proprietary and will not disclose or use the Confidential Information without the prior written consent of the other party. Without limiting the foregoing, both parties agree that it shall (a) use the Confidential Information only in connection with the business relationship of this Agreement and for no other purpose, and (b) hold in confidence, maintain as confidential and not use or disclose the Confidential Information. The restrictions set forth in this Agreement shall not apply to any part of the Confidential Information (y) in the public domain not as a result of the violation of three parties' undertakings herein, or (z) hereafter made available to three parties on a non-confidential basis, which is not violating any duty or agreement of confidentiality. FORCOME acknowledges that all information regarding its proposed business relationship with BLUESKY AND CABELAS shall be deemed Confidential Information except to the extent that such information falls within the exhibit A. Receiving party agrees to notify BLUESKY AND CABELAS immediately upon the occurrence of any breach of this Agreement or unauthorized release of the Confidential Information and to

18

assist BLUESKY AND CABELAS in mitigating any losses or damages which may occur there from. In the event of a breach of this Agreement, one party will pay to the other party attorney's fees and other costs and expenses incurred in connection with the enforcement of any provisions of this Agreement.

At no time will any Forcome previous or current employee have any direct or indirect contact (emails, phone conversations, letters, or indirect meetings) with anyone in relationship to Blue Sky Innovation Group business dealings without the written approval by Jeffrey W Palese Blue Sky's acting President.

*Id.*, § 7 (the "Confidentiality Clause of the Cooperation Agreement").

44.     Again, only with respect to Forcome Shanghai, the Confidentiality Clause of the Cooperation Agreement provides, "[Forcome Shanghai] acknowledges that all information regarding its proposed business relationship with BLUESKY AND CABELAS shall be deemed Confidential Information except to the extent that such information falls within the exhibit A." Id. (emphasis added).

45.     Exhibit A to the Cooperation Agreement lists four COOL-TEK grinder models that were also included in Exhibit A to the NDA executed about one year before the Cooperation Agreement.

46.     Exhibit A to the Cooperation Agreement also reflects that Blue Sky and Forcome Shanghai agreed to work together to develop the products listed in Exhibit A. Specifically, Blue Sky mainly worked for design input and marketing, and Forcome Shanghai worked for engineering and manufacturing.

47.     While the Confidentiality Clause of the Cooperation Agreement prohibited Forcome Shanghai's previous or current employee from having any direct or indirect contact (emails, phone conversations, letters, or indirect meetings) with anyone ***in relationship to Blue Sky Innovation Group business dealings*** without the written approval by Mr. Palese, Blue Sky's

19

acting President, the Clause did not prohibit Forcome Shanghai from contacting Cabela's or Bass Pro. *Id.* §7.

48.     The Confidentiality Clause of the Cooperation Agreement also provides that in the event of a breach of the Agreement, one party will pay the other party attorney's fees and other costs and expenses incurred in connection with the enforcement of any provisions of this Agreement. *Id.*, § 7.

**C.     The Parties' Co-Development of the Cabela Carnivore Grinder Model**

49.     At the beginning of the parties' cooperation, Blue Sky raised an issue to Forcome Shanghai that many meat grinders on the market failed to address—the temperature of the head of the machine would become too high after the meat was minced for some time, and the meat would be cooked, and Blue Sky hoped that Forcome Shanghai could find a cooling solution in the machine head.

50.     Forcome Group's research and development team provided various design proposals to Blue Sky at that time.

51.     After many rounds of trials and revisions, and lots of prototyping and technical testing, Forcome Group's research and development team came up with a solution to the heating issue Blue Sky raised.

52.     Accordingly, Forcome Shanghai provided Blue Sky with the engineering design drawings.

53.     Blue Sky then sought out a local industrial product designer in the United States to provide cosmetic changes to the meat grinder.

54.     Forcome's work, along with minor changes proposed by the U.S. industrial product designer, became the Cabela Carnivore Grinder.

55.     In the whole development process, the engineering design proposed by Forcome Shanghai came first, followed by minor cosmetic changes from the U.S. industrial product designer.

56.     Forcome Shanghai's engineering design of the Cabela Carnivore Grinder largely dictated its appearance; as a result, the design of the Cabela Carnivore Grinder is in no way solely owned by Blue Sky.

57.     During the early and middle stages of the cooperation between Forcome Shanghai and Blue Sky, both parties made clear to each other—in the presence of both Forcome Shanghai's and Blue Sky's personnel—that in order to protect the rights and interests of both parties, as well as Cabela's, with respect to the co-developed Cabela Carnivore Grinder models, Forcome Shanghai and Blue Sky would separately register patents in China and the United States.

58.     The aforementioned understanding regarding separate patent registrations is consistent with the Confidentiality Clauses in the NDA and Cooperation Agreement in that both clauses specifically carve out that information falling under the co-developed products is not considered Confidential Information with respect to Forcome Shanghai.  Exhibit 2, § 7.

59.     Consistent with the parties' mutual understanding and the terms of the NDA and the Cooperation Agreement, Forcome Qingdao, which designed and manufactured the Cabela Carnivore Grinders, registered and obtained multiple design and utility patents from the China National Intellectual Property Administration ("CNIPA").

**D.     Blue Sky's Improper Conduct**

60.     In or about 2017 and 2018, unbeknownst to Forcome Group, Blue Sky entered into one or more contracts with Yuchi Metal Products Co. ("Yuchi"), under which Yuchi would produce meat grinders for sale by Cabela's and then Bass Pro, which acquired Cabela's.

61.     Upon information and belief, the Yuchi grinders are substantially similar to the Cabela Carnivore Grinders jointly developed by Forcome Shanghai and Blue Sky.

62.     Shortly before or around the same time Blue Sky and Yuchi's cooperation began, Blue Sky sought from Forcome Shanghai design drawings of the Cabela Carnivore Grinders and also asked Forcome Shanghai to provide videos showing the details of the manufacturing process of the Cabela Carnivore Grinders.

63.     Forcome Shanghai's drawings of the Cabela Carnivore Grinder and videos of the manufacturing process of same are confidential and proprietary.

64.     Upon information and belief, Blue Sky shared these design drawings and videos with Yuchi to enable Yuchi to manufacturer similar products to the Cabela Carnivore Grinders.

65.     Blue Sky was never authorized to provide Forcome Shanghai's drawings of the Cabela Carnivore Grinder and videos of the manufacturing process of same to Yuichi.

66.     The purpose of Blue Sky's conduct was to enable Yuchi to complete with Forcome Shanghai and ultimately replace Forcome Shanghai with Yuchi as Cabela's and Bass Pro's supplier.

67.     In the fall and winter of 2019, Blue Sky placed with Forcome Hong Kong a large quantity of purchase orders for Cabela's and/or for Bass Pro for shipment in early 2020.

68.     Forcome confirmed the receipt of the orders and immediately started to purchase manufacturing and packaging materials in preparation for these orders.

69.     After Forcome Hong Kong had already purchased manufacturing and packaging materials for these orders, Blue Sky informed Forcome Hong Kong that Cabela's and/or Bass Pro would be cancelling these orders.

22

70.     After working Blue Sky for months to try to seek confirmation for orders from Cabela's and/or Bass Pro, Blue Sky maintained that Cabela's and/or Bass Pro would not need to place orders from Forcome Hong Kong.

71.     Upon information and belief, Blue Sky diverted Cabela's and/or Bass Pro's orders from Forcome Hong Kong to Yuchi.

72.     In or around May 2020, Blue Sky informed Forcome Shanghai that Blue Sky was terminating its Cooperation Agreement with Forcome Shanghai and its contractual relationship with Forcome Hong Kong.

73.     Forcome Hong Kong was faced with significant loss of profits and waste of the manufacturing materials purchased in preparation for orders from Cabela's and/or Bass Pro.

74.     To mitigate its damages, and after being told by Blue Sky that Blue Sky was terminating the Cooperation Agreement, Forcome Hong Kong reached out to Bass Pro, and Bass Pro was willing to take orders directly from Forcome Hong Kong.

75.     Around the summer of 2020, Forcome Hong Kong ultimately sold Bass Pro the products that were originally scheduled to be delivered in early 2020.

76.     In selling products directly to Bass Pro, the Forcome Group did not disclose Blue Sky's pricing information.

**E.      The '080 Patent and the Accused Products Differ Substantially**

77.     In its First Amended Complaint, Blue Sky alleges that it is the sole owner of the '080 Patent.  *See* First Amended Compl., ¶ 22.

78.     The '080 Patent was the result of the cooperation between Blue Sky and Forcome Shanghai, to which Forcome Shanghai contributed substantially and significantly.

79.   After Blue Sky and Forcome Shanghai's business relationship was terminated, Forcome Shanghai and/or its affiliated companies began manufacturing and selling to the United States meat grinders that are being offered for sale and sold by AOB under the brand name Meat! Your Maker (the "AOB Products").

80.   The AOB Products are not based on the '080 Patent and differ from the '080 Patent in various material aspects; as a result, the AOB Products do not infringe the '080 Patent in any way.

81.   Also after Blue Sky and Forcome Shanghai's business relationship was terminated, Forcome Shanghai and/or its affiliated companies began manufacturing and selling to the United States meat grinders that are being offered for sale and sold by TSM under the brand name The Sausage Maker (the "TSM Products").

82.   The TSM Products are not based on the '080 Patent and differ from the '080 Patent in various material aspects; as a result, the TSM Products do not infringe the '080 Patent in any way.

## FIRST COUNTERCLAIM – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. D831,080

83.   Forcome Hong Kong incorporates by reference the above paragraphs in its Counterclaims as though fully stated herein.

84.   There is an actual controversy between Forcome Hong Kong on the one hand, and Blue Sky on the other, as to whether Forcome Hong Kong infringes any valid and enforceable claim of the '080 patent.

85.   No ordinary observer would purchase the AOB Product believing that it is the claimed design. For example, and without limitation, among the many differences between AOB's

product's appearance and the claimed design are the shapes of motor covers, the shapes of drawer, and the shapes of the handles.

86.     Moreover, no ordinary observer, giving the attention that a purchaser usually gives, would find the claimed design and the AOB Products to be substantially the same in light of the relevant prior art.

87.     Based on these differences, no ordinary observer would believe that the AOB Product is the claimed design. Therefore, AOB has not infringed and does not infringe any valid and enforceable claim of the '080 Patent.

88.     No ordinary observer would purchase the TSM Product believing that it is the claimed design. For example, and without limitation, among the many differences between TSM's product's appearance and the claimed design are the shapes of motor covers and the shapes of the handles.

89.     Moreover, no ordinary observer, giving the attention that a purchaser usually gives, would find the claimed design and the TSM Products to be substantially the same in light of the relevant prior art.

90.     Based on these differences, no ordinary observer would believe that the TSM Product is the claimed design. Therefore, TSM has not infringed and does not infringe any valid and enforceable claim of the '080 Patent.

91.     Accordingly, Forcome Hong Kong seeks a judgment declaring that it does not infringe and has not infringed, directly or indirectly, contributorily or by inducement, any claim of the '080 Patent.

## SECOND COUNTERCLAIM – DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. D831,080

92.     Forcome Hong Kong incorporates by reference the above paragraphs in its Counterclaims as though fully stated herein.

93.     There is an actual controversy between Forcome Hong Kong on the one hand, and Blue Sky on the other, as to the invalidity of the '080 patent.

94.     The '080 Patent, and all of its claims, are invalid for failure to comply with one or more of the requirements of patentability set forth in Title 35 of the United States Code or the rules, regulations, and laws related thereto, including without limitation the requirements of 35 U.S.C. §§ 171, 102, 103, and/or 112.

95.     The '080 Patent is not entitled to its earliest priority date because the drawings ("the '080 Drawings") filed in the '080 Patent were previously submitted in the Parent Application and were rejected by the USPTO as introducing new matter. Due to this new matter added via the '080 Drawing, the '080 Patent is not entitled to the May 26, 2016 priority date. Rather, the '080 Patent is at most entitled to the effective filing date of February 22, 2018.

96.     Forcome Hong Kong supplied to Blue Sky and Blue Sky sold the Cabela Carnivore Grinder no later than 2015.  The Cabela Carnivore Grinder is thus prior art to the '080 Patent.

97.     The Cabela Carnivore Grinder discloses substantially the same overall visual impression as the claimed designs of the '080 Patent.

98.     Therefore, the Cabela Carnivore Grinder invalidates the claimed design of the '080 Patent under 35 U.S.C. §§102 and/or 103.

99.     Accordingly, Forcome Hong Kong seeks a judgment declaring that the '080 Patent and its claim are invalid and of no legal consequence.

## THIRD COUNTERCLAIM - JOINT OF INVENTORSHIP OF
## U.S. PATENT NO. D831,080

100.     On information and belief, certain employee(s) of the Forcome Group conceived

of, or contributed to the conception of, the invention of the '080 Patent and its subsequent reduction

to practice. The contributions were significant to the conception and reduction to practice of the

invention and are not insignificant in quality in comparison to the full invention claimed in the

'080 Patent.

101.     These employee(s) of the Forcome Group are inventors of the '080 Patent.

102.     As inventors, the employee(s) of Forcome Group have an ownership interest in the

'080 Patent and a duty to assign any such right to the appropriate Forcome entity.

103.     Blue Sky wrongfully listed Mr. Palese as the sole inventor of the '080 Patent.

104.     Accordingly, pursuant to 35 U.S.C. § 256, Forcome Shanghai seeks an Order from

the Court requiring correction of the inventorship of the '080 Patent and an Order directed to the

U.S. Commissioner of Patents (the Director of the USPTO) requiring issuance of a Certificate of

Correction.

## FOURTH COUNTERCLAIM – BREACH OF CONTRACT

105.     Forcome Hong Kong incorporates by reference the above paragraphs in its

Counterclaims as though fully stated herein.

106.     In the fall and winter of 2019, Blue Sky placed with Forcome Hong Kong purchase

orders for Cabela's and/or for Bass Pro for shipment in early 2020.

107.     Forcome Hong Kong confirmed the receipt of the orders and purchased

manufacturing and packaging materials in preparation for these orders.

108.     Thus, a valid contract existed between Blue Sky and Forcome Hong Kong for the

supply of products to Cabela's and/or for Bass Pro in early 2020.

109.     In order to fulfill its obligations under the contract, Forcome Hong Kong purchased necessary manufacturing and packaging materials for the purchase orders.

110.     Blue Sky canceled these orders and informed Forcome Hong Kong that the customers would no longer need these products.

111.     Upon information and belief, Blue Sky diverted Cabela's and/or Bass Pro's orders from Forcome Hong Kong to Yuchi.

112.     Blue Sky's unjustified cancellation of these orders breached the parties' contract.

113.     Forcome Hong Kong was faced with significant loss of profits and waste of the manufacturing materials purchased in anticipation of orders from Cabela's and/or Bass Pro.

114.     To mitigate its damages, Forcome Hong Kong had no choice but to reach out to Bass Pro, and Bass Pro was willing to take orders directly from Forcome Hong Kong.

115.     Forcome Hong Kong's sale to Bass Pro occurred around the summer of 2020, many months after the originally scheduled shipment, i.e., Forcome Hong Kong was essentially fulfilling Bass Pro's purchase orders for the summer of 2020, instead of early 2020.

116.     Due to Blue Sky's conduct, Forcome Hong Kong lost its opportunity to fulfill Cabela's and/or Bass Pro's orders for early 2020.

117.     As a result of Blue Sky's breach, Forcome Hong Kong has suffered damages in an amount to be determined at trial, but not less than $75,000.00, exclusive of interest.

## PRAYER FOR RELIEF

WHEREFORE, Forcome Hong Kong prays for a judgment in its favor, including:

A.     As to Count I, a declaration that Forcome Hong Kong has not infringed, and is not infringing, any valid and enforceable claim of the '080 Patent;

B.     As to Count II, a declaration that each of the claims of the '080 Patent is invalid;

C.      As to Count III, an order requiring correction of the inventorship of the '080 Patent and directing to the U.S. Commissioner of Patents (the Director of the USPTO) requiring issuance of a Certificate of Correction;

D.      As to Count IV, damages in an amount to be determined at trial, but not less than $75,000.00;

E.      An award of costs for this action together with Forcome Hong Kong's reasonable attorneys' fees for this case;

F.      An award of pre-judgment and post-judgment interest on its damages, as allowed by law; and

G.      Any and other relief deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Forcome Hong Kong demands a trial by jury of all issues so triable in this action.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Todd R. Tucker
Yizhou Liu
Ronald M. McMillan
Xin Wen
CALFEE, HALTER & GRISWOLD LLP
1405 E. 6th Street
Cleveland, Ohio 44114
Tel: (216) 622-8200

By:  */s/ David E. Moore*
     David E. Moore (#3983)
     Bindu A. Palapura (#5370)
     Andrew L. Brown (#6766)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19801
     Tel:  (302) 984-6000
     dmoore@potteranderson.com
     bpalapura@potteranderson.com
     abrown@potteranderson.com

Dated:  May 5, 2023                          *Attorneys for Defendant Forcome Co., Ltd.*
10792877 / 22920.00001