**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

BLUE SKY INNOVATION GROUP, INC.,

                    Plaintiff,

       v.

FORCOME CO., LTD, and FORCOME
(SHANGHAI) CO., LTD.,

                  Defendants.

**C.A. No.: 1:23-cv-00129-MN**

**JURY TRIAL DEMANDED**

<u>**SECOND AMENDED COMPLAINT**</u>

Plaintiff Blue Sky Innovation Group, Inc. ("Blue Sky" or "Plaintiff"), for its second amended complaint against Forcome Co., Ltd. ("Forcome Hong Kong"), and Forcome (Shanghai) Co., Ltd. ("Forcome Shanghai"), collectively (" Forcome Defendants"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is an action for breach of contract, tortious interference, and misappropriation of trade secrets regarding the manufacture, sale, and distribution of Plaintiff's grinder, described in detail below.

<u>**THE PARTIES**</u>

2.      Blue Sky is an Ohio Corporation with its principal place of business at 2931 Abbe Rd. N, Sheffield Lake, Ohio 44054.

3.      Upon information and belief, Forcome Hong Kong is a foreign corporation with its principal place of business at Building 109, No. 255, South Sizhuan Road, Shanghai 201612 China.

4.      Upon information and belief, Forcome Shanghai is a foreign corporation with its principal place of business at Building 109, No. 255, South Sizhuan Road, Shanghai 201612 China.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over Blue Sky's claims under 28 U.S.C. § 1332.  Blue Sky, on the one hand, is a citizen of the state of Ohio, and Defendants, on the other hand, are citizens or subjects of a foreign state, and the controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.     Forcome Hong Kong is subject to personal jurisdiction in this District because, upon information and belief, Forcome Hong Kong regularly and continuously transacts business in the State of Delaware by importing, offering to sell, and/or selling products in the State of Delaware.  Upon information and belief, Forcome Hong Kong derives substantial revenue from interstate commerce, including substantial revenue from goods used in the State of Delaware.

7.     Forcome Shanghai is subject to personal jurisdiction in this District because, upon information and belief, Forcome Shanghai regularly and continuously transacts business in the State of Delaware by importing, offering to sell, and/or selling products in the State of Delaware.  Upon information and belief, Forcome Shanghai derives substantial revenue from interstate commerce, including substantial revenue from goods used in the State of Delaware.

8.     Venue is proper in this District as to Forcome Hong Kong under 28 U.S.C. § 1391(b)-(c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and/or because Forcome Hong Kong is subject to this Court's personal jurisdiction with respect to this action.  Venue is also proper under 28 U.S.C. § 1391(c)(3) because Forcome Hong Kong is not a resident of the United States and may be sued in any judicial district.

9.     Venue is proper in this District as to Forcome Shanghai under 28 U.S.C. § 1391(b)-(c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and/or because Forcome Shanghai is subject to this Court's personal jurisdiction with

respect to this action.  Venue is also proper under 28 U.S.C. § 1391(c)(3) because Forcome Shanghai is not a resident of the United States and may be sued in any judicial district.

<u>**FACTUAL BACKGROUND**</u>

**B.**     **Manufacturing Agreement Between Blue Sky and Forcome**

10.     Blue Sky develops innovative consumer products and has developed over 300 products in the outdoor sports and recreational areas, including meat grinders.

11.     Forcome Hong Kong is a trading and manufacturing company that specializes in exporting outdoor products, tools, and equipment.

12.     Forcome Shanghai is a trading and manufacturing company that specializes in exporting outdoor products, tools, and equipment.

13.     Forcome Hong Kong and Forcome Shanghai, along with several other Forcome-related entities, are affiliated corporations. Upon information and belief, the sole owner of Forcome Hong Kong is also the majority owner of Forcome Shanghai.

14.     Upon information and belief, contracts exist among Forcome Shanghai and Forcome Hong Kong providing that Forcome Shanghai markets and sells the subject products, and Forcome Hong Kong interfaces with customers overseas and receives purchase orders and payments for such products.

15.     In or around April 25, 2013, Blue Sky and Forcome Shanghai and Forcome Hong Kong began discussions to develop several meat grinders.

16.     On May 20, 2013, Blue Sky and Forcome Shanghai entered into a non-disclosure agreement (the "NDA") for the development of several specific meat grinders and other items, all of which were designed by Blue Sky.

17.     Attached as **Exhibit A** is a true and correct copy of the NDA.

18.     The NDA contained an exclusivity clause which required Forcome Shanghai to sell the specified products exclusively to Blue Sky and prohibited Forcome Shanghai from selling similar products to anyone other than Blue Sky or its customer, Cabela's.  Exhibit. A ¶ 2.

19.     Cabela's is an American retailer that specializes in hunting, fishing, boating, camping, shooting, and other outdoor recreation merchandise.

20.     The NDA also contained a confidentiality clause which prohibited Forcome Shanghai from disseminating Blue Sky's confidential information, including, but not limited to, the product designs. *Id.* ¶ 6.

21.     As per the NDA, in or around May 2013, Blue Sky provided Forcome Shanghai and Forcome Hong Kong with all necessary drawings and designs, and Blue Sky also supplied Forcome Shanghai and Forcome Hong Kong with prototypes of similar grinders for reverse engineering of the product, specifically the motor cover, drawer, grinder head, screw nut, and oval meat tray.

22.     Upon information and belief, prior to working with Blue Sky, Forcome Shanghai and Forcome Hong Kong had never manufactured any commercial meat grinders.

23.     On or about September 2, 2014, Blue Sky and Forcome Shanghai entered into a Cooperation Agreement (the "Cooperation Agreement") under which Forcome Shanghai would manufacture for Blue Sky certain meat grinders (the "Carnivore Grinders") according to designs provided by Blue Sky.

24.     The Carnivore Grinders were designed exclusively by Blue Sky and were patent-pending. Attached as **Exhibit B** is a true and correct copy of the Cooperation Agreement.

25.    The Cooperation Agreement contained an exclusivity clause which required Forcome Shanghai to sell the specified products exclusively to Blue Sky and prohibited Forcome Shanghai from selling similar products to anyone other than Blue Sky.  Exhibit B at ¶ 2.

26.    The Cooperation Agreement's exclusivity clause reads as follows:

> 2.    <u>Exclusivity.</u>  FORCOME agrees that it will exclusively sell the identified product in <u>Exhibit A</u> after the date hereof (collectively, the "Exclusive Products") to BLUESKY and that FORCOME will not sell the Exclusive Products, or similar exclusive products to anyone in the world. And the parties acknowledge and agree that FORCOME shall be the sole manufacturer for the exclusive products unless termination is deemed necessary to due to reason in paragraph 6 of this agreement.
>
> Per the request of Cabela's Management, during the cooperation period of BlueSky/Cabela's purchasing Commercial Grinders from Forcome, FORCOME agrees that it will not manufacture, sell or distribute any similar commercial grinders, in the U.S. or Canadian market that will compete against the commercial line of meat grinders that Cabela's and BLUESKY are purchasing from FORCOME.

*Id.* ¶ 2 (the "Exclusivity Clause").

27.     The Cooperation Agreement also contained a confidentiality clause which prohibited Forcome Shanghai from disclosing or using Blue Sky's confidential information for any other purpose.  *Id*. at ¶ 7.

28.    The Cooperation Agreement's confidentiality clause reads as follows:

> 7. <u>Confidentiality.</u>        In connection with the business between BLUESKY, CABELAS and FORCOME, any one of party which may have access to confidential information or proprietary information of or regarding the other party, including, without limitation, products, Customers, marketing data, methods and related items (the "Confidential Information") agrees to treat the Confidential Information as proprietary and will not disclose or use the Confidential Information without the prior written consent of the other party. Without limiting the foregoing, both parties agree that it shall (a) use the Confidential Information only in connection with the business relationship of this Agreement and for no other purpose, and (b) hold in confidence, maintain as confidential and not use or disclose the Confidential Information. The restrictions set forth in this Agreement shall not apply to any part of the Confidential Information (y) in the public domain not as a result of the violation of three parties' undertakings herein, or (z) hereafter

made available to three parties on a non-confidential basis, which is not violating any duty or agreement of confidentiality. FORCOME acknowledges that all information regarding its proposed business relationship with BLUESKY AND CABELAS shall be deemed Confidential Information except to the extent that such information falls within the exhibit A. Receiving party agrees to notify BLUESKY AND CABELAS immediately upon the occurrence of any breach of this Agreement or unauthorized release of the Confidential Information and to assist BLUESKY AND CABELAS in mitigating any losses or damages which may occur there from. In the event of a breach of this Agreement, one party will pay to the other party attorney's fees and other costs and expenses incurred in connection with the enforcement of any provisions of this Agreement.

At no time will any Forcome previous or current employee have any direct or indirect contact (emails, phone conversations, letters, or indirect meetings) with anyone in relationship to Blue Sky Innovation Group business dealings without the written approval by Jeffrey W Palese Blue Sky's acting President.

*Id.* ¶ 7 (the "Confidentiality Clause").

29.     On or about October 31, 2014, Blue Sky sent Forcome Shanghai and Forcome Hong Kongthe relevant designed for the Carnivore Grinders, including the final design of the motor cover, pursuant to the Cooperation Agreement.

30.     Thereafter, Forcome Shanghai and Forcome Hong Kong began manufacturing the Carnivore Grinders, which Blue Sky then sold to Cabela's, pursuant to the Cooperation Agreement.

## C.     Forcome Shanghai's Improper Activities

31.     Unbeknownst to Blue Sky at the time, after receiving the relevant designs for the Carnivore Grinders and their parts, Forcome Shanghai and Forcome Hong Kong and affiliated entities/individuals began the process of obtaining various patents with the China National Intellectual Property Administration ("CNIPA").

32.     From 2015 to 2017, Forcome Shanghai and Forcome Hong Kong and affiliated entities/individuals improperly obtained the following patents granted by the CNIPA: utility model

and design patents for the grinders, utility model patent for the Cool-Tek, and two utility model patents for the safety cover (the "Stolen Forcome Patents").

33.     The Stolen Forcome Patents were based on Blue Sky's designs and intellectual property.

34.     Because of the difference between the American and Chinese patent application process, the Stolen Forcome Patents were made publicly available earlier than Blue Sky's own patent applications.

35.     Thus, there were periods of time in which Blue Sky's confidential information was improperly and impermissibly made publicly available by Forcome Shanghai and Forcome Hong Kong and affiliated entities/individuals.

**D.     Termination of the Cooperation Agreement**

36.     In or about July 2017, Blue Sky began to develop designs for a new grinder model, following development of issues and disputes with Forcome Shanghai and Forcome Hong Kong.

37.     On or about July 27, 2017, Blue Sky and Yuchi Metal Products Co. ("Yuchi") executed a Sales and Confidential Agreement for the manufacture of different grinder to be sold to Cabela's (the "Yuchi Grinders").

38.     On or about October 4, 2018, Blue Sky and Yuchi signed a tooling and manufacturing agreement for the manufacture and sale of the Yuchi Grinder to Bass Pro Shops ("Bass Pro"), which had since acquired Cabela's.

39.     As a result, in or around July 2020, Blue Sky's informed Forcome Shanghai and Forcome Hong Kong that Blue Sky was terminating the Cooperation Agreement.

40.     However, not all of the termination provisions of the Cooperation Agreement have been completed, due to failure of Forcome Shanghai to comply with such provisions, including, but not limited to, the parties engaging in alternative dispute resolution.

**E.    Forcome Shanghai and Forcome Hong Kong Tortiously Interfere with Blue Sky's Business Relationships and Agreements**

41.     In or about July of 2020, Laura Lee, the Executive Vice President of Forcome Hong Kong shared Blue Sky's confidential pricing information in connection with the Carnivore Grinders with Bass Pro.

42.     Upon information and belief, Ms. Lee also informed Bass Pro that it could buy the Carnivore Grinders directly from Forcome Defendants, bypassing Blue Sky.

43.     This communication was in direct violation of the Exclusivity and Confidentiality Provisions of the Cooperation Agreement, which was still in effect.

44.     Despite Forcome Defendants' efforts, Blue Sky and Yuchi moved forward on their manufacturing and sales of the Yuchi Grinders.

45.     However, in the fall of 2020, Forcome Defendants and affiliated entities/individuals filed a lawsuit against Yuchi in the Shenzhen Intermediate People's Court in China for patent infringement. On information and belief, Forcome Defendants caused such lawsuit to be filed.

46.     As a result, on or about October 21, 2020, a shipment of the Yuchi Grinders from Yuchi to Bass Pro was blocked from being exported from China.

47.      During the pendency of Forcome Defendants' suit, Yuchi was not permitted to export the Yuchi Grinders to Bass Pro or otherwise fully perform on its agreement with Blue Sky.

48.     This blockage lasted for many months, many of which were during the busiest food processing and pre-Christmas sales season for Bass Pro.

49.     On information and belief, Forcome Defendants deliberately timed its lawsuit against Yuchi to disrupt shipments during this busy season.

50.     This blockage of shipments resulted in Bass Pro having empty shelves and lost sales affecting business for both Bass Pro and Blue Sky.

51.     Further, this blockage strained Blue Sky's business relationship with Bass Pro.

52.     In particular, Blue Sky lost favorable delivery status with Bass Pro, which resulted in nearly daily communications regarding delivery and updates on legal status issues in China.

53.     Ultimately, after several months, Yuchi was required to pay a bond to release held inventory shipments and to continue shipments of products to Bass Pro pending legal resolutions of the Forcome Defendants' lawsuit against Yuchi in China.

54.     On or about July 1, 2022, the Shenzhen Intermediate People's Court found in favor of Yuchi and invalidated Forcome Defendants' and their affiliated entities'/individuals' patent, which was based on Blue Sky's intellectual property.

**F.     Forcome Shanghai and Forcome Hong Kong Partner With AOB**

55.     Upon information and belief, Forcome Shanghai and Forcome Hong Kong are presently manufacturing and importing into the United States meat grinders that are being offered for sale and sold by American Outdoor Brand, Inc. ("AOB") under the brand name Meat! Your Maker (the "AOB Violative Products").

56.     A side-by-side comparison of the Carnivore Grinder and the AOB Violative Products is shown below.

| Carnivore Grinder | AOB Violative Products |
|---|---|



| Carnivore Grinder | AOB Violative Products |
|---|---|



57.     As evidenced above, the design of the AOB Violative Products is substantially the same as the design of the Carnivore Grinder.

58.     In addition, the component parts of the AOB Violative Products, including the food tray, plates, and retaining ring, are identical to those of the Carnivore Grinders, as shown below.



| Carnivore Grinder | AOB Violative Products |
|---|---|

59.     Other identical component parts used in the AOB Violative Products include the grinder head, cutter, auger, sausage funnels, removeable safety guard, and manual pusher.

60.     Upon information and belief, the design and tooling of each of the component parts of the AOB Violative Products discussed above in paragraphs 57 and 58 is based on Blue Sky's designs and was obtained pursuant to the Cooperation Agreement.

**G.      Forcome Shanghai and Forcome Hong Kong Also Partner With Sausage Maker**

61.     Upon information and belief, Forcome Shanghai and Forcome Hong Kong are also presently manufacturing and importing into the United States meat grinders that are being offered for sale and sold by The Sausage Maker, Inc. ("Sausage Maker") under the brand name The Sausage Maker (the "Sausage Maker Violative Products").

62.    A side-by-side comparison of the Carnivore Grinder and the Sausage Maker Violative Products is shown below.



| Carnivore Grinder | Sausage Maker Violative Products |
|---|---|

63.    As evidenced above, the design of the Sausage Maker Violative Products is substantially the same as the design of the Carnivore Grinder.

64.     In addition, other component parts of the Sausage Maker Violative Products, including the food tray and plates, are identical to those of the Carnivore Grinders, as shown below.



| Carnivore Grinder | Sausage Maker Violative Products |
|---|---|

65.     Upon information and belief, the design and tooling of each of the component parts of the Sausage Maker Violative Products discussed above in paragraph 63 is based on Blue Sky's designs and was obtained pursuant to the Cooperation Agreement.

66.     Blue Sky has repeatedly informed Forcome Shanghai and Forcome Hong Kong that their above-described actions constitute a violation of the Cooperation Agreement and to cease and desist from manufacturing the breaching products.

67.     Forcome Shanghai and Forcome Hong Kong have refused to cease and desist from their breachingconduct.

**COUNT I**
**Breach of the Cooperation Agreement Exclusivity Provision**
**(Against Defendant Forcome Shanghai)**

68.     Blue Sky re-alleges and incorporates, by reference herein, the allegations in the previous paragraphs as if fully set forth herein verbatim.

69.     Blue Sky and Forcome Shanghai are parties to the Cooperation Agreement, which is a valid and enforceable contract.

70.     Pursuant to the Exclusivity Clause of the Cooperation Agreement, Forcome Shanghai was prohibited from selling the Carnivore Grinders "or similar products" to any party other than Blue Sky. Exhibit B § 2.

71.     Pursuant to the Exclusivity Clause of the Cooperation Agreement, Forcome Shanghai was prohibited from manufacturing, selling, or distributing "any similar commercial grinders" in the U.S. and Canada "that will compete against the commercial line of meat grinders" covered by the Cooperation Agreement. *Id.*

72.     At some point after the execution of the Cooperation Agreement, Forcome Shanghai began manufacturing commercial grinders separate from those it manufactured pursuant to the Cooperation Agreement.

73.     On information and belief, these similar meat grinders were and continue to be sold to AOB, Sausage Maker, and possibly other retailers.

74.     These other Forcome Shanghai grinders are similar commercial grinders to the Carnivore Grinders because they are functionally the same.

75.     Upon information and belief, the internal component parts are similar or identical.

76.     Below are photos of a Forcome Shanghai product (left) next to the Carnivore Grinder (right):

 

77.     Upon information and belief, Forcome Shanghai may manufacture additional similar grinders to the Carnivore Grinders.

78.     In addition, on or about July of 2020, Laura Lee, the Executive Vice President of Forcome Hong Kong shared Blue Sky's confidential pricing information in connection with the Carnivore Grinders with Bass Pro and informed Bass Pro that it can buy the Carnivore Grinders directly from Forcome Shanghai and Forcome Hong Kong, bypassing Blue Sky.

79.     This conduct constitutes Forcome Shanghai's breach of the Exclusivity Clause of the Cooperation Agreement.

80.     Blue Sky has fully performed on all of its obligations in the Cooperation Agreement.

81.     As a result of Forcome Shanghai's breach, Blue Sky has suffered damages in an amount to be determined at trial, but not less than $75,000.00, exclusive of interest.

<u>**COUNT II**</u>
**Breach of the Cooperation Agreement Confidentiality Provision**
**(Against Defendant Forcome Shanghai)**

82.    Blue Sky realleges and incorporates, by reference herein, the allegations in the previous paragraphs as if fully set forth herein verbatim.

83.    Pursuant to the Confidentiality Provision of the Cooperation Agreement, Forcome Shanghai was prohibited from disclosing confidential information regarding Blue Sky. Exhibit B § 7.

84.    Such confidential information included Blue Sky's pricing with Cabela's, and later Bass Pro. *Id.*

85.    Such confidential information included Blue Sky's product designs. *Id.*

86.    Pursuant to the Confidentially Provision, Forcome Shanghai was prohibited from speaking directly to Bass Pro regarding Blue Sky without the written approval by Jeffrey W Palese, Blue Sky's acting President. *Id.*

87.    Pursuant to the Confidentially Provision, if found liable for breach of this provision, Forcome Shanghai is liable for Blue Sky's "attorney's fees and other costs and expenses incurred in connection with the enforcement of any provisions of this Agreement." *Id.*

88.    As described above, in or about July 2020, Laura Lee, the Executive Vice President of Forcome Hong Kong shared with Bass Pro, Blue Sky's confidential pricing information in connection with the Carnivore Grinders and informed Bass Pro that it can buy the Carnivore Grinders directly from Forcome Shanghai and Forcome Hong Kong, bypassing Blue Sky.

89.    As described above, from 2015 to 2017 Forcome Shanghai and Forcome Hong Kong filed patent applications with the CNIPA, using Blue Sky's confidential designs from the Carnivore Grinders.

90.     From 2015 to 2017, Forcome Shanghai and Forcome Hong Kong improperly filed for and obtained patents granted by the CNIPA for the Stolen Forcome Patents.

91.     During this time, Blue Sky was also filing for its patents in the United States.

92.     During this time, Blue Sky's designs were not publicly available until they were properly published by the United States Patent and Trademark Office ("PTO").

93.     However, once the CNIPA granted Forcome Shanghai and Forcome Hong Kong the Stolen Forcome Patents, they were published and made publicly available.

94.     Specifically, Forcome Shanghai and Forcome Hong Kong obtained a Chinese utility model patent on Blue Sky's Carnivore Grinder, which was published on or about December 9, 2015.  The information contained in that specific Stolen Forcome Patents was not made publicly available by Blue Sky until October 20, 2017, when Blue Sky's patent on its Grinder was published.

95.     Forcome Shanghai and Forcome Hong Kong also obtained a Chinese design patent on the Carnivore Grinder, which was published on or about July 7, 2017.  The information contained in that specific Stolen Forcome Patent was not made publicly available by Blue Sky until October 16, 2018, when Blue Sky's design patent on its grinder and motor base was published.

96.     Forcome Shanghai and Forcome Hong Kong also obtained a Chinese utility model patent on Blue Sky's Cool-Tek for the Carnivore Grinder, which was published on or about December 9, 2015.  The information contained in that specific Stolen Forcome Patent was not made publicly available by Blue Sky until October 17, 2020, when one of Blue Sky's design patents on its Cool-Tek was published, and March 2, 2021, when the other of Blue Sky's design patent and Blue Sky's utility model patent on its Cool-Tek was published.

97.     Forcome Shanghai and Forcome Hong Kong also obtained a Chinese utility model patent on Blue Sky's safety cover for the Carnivore Grinder, which was published on November 25, 2015. The information contained in that specific Stolen Forcome Patent was not made publicly available by Blue Sky until January 18, 2016, when one of Blue Sky's design patents on its safety cover for the Carnivore Grinder was published.

98.     Because the Stolen Forcome Patents were derived from Blue Sky's confidential designs, by obtaining Chinese patents and making the Stolen Forcome Patents publicly available, Blue Sky's confidential designs were improperly disclosed to the public by Forcome Shanghai and Forcome Hong Kong *before* they were made publicly available by virtue of Blue Sky's patent publications.

99.     All of the above conduct constitutes breach of the Confidentiality Provision of the Cooperation Agreement.

100.    Blue Sky has fully performed on all its obligations under the Cooperation Agreement.

101.    As a result of Forcome Shanghai's breach, Blue Sky has suffered damages in an amount to be determined at trial, but not less than $75,000.00, exclusive of interest.

## COUNT III
### Tortious Interference
### (Against Defendants Forcome Shanghai and Forcome Hong Kong)

102.    Blue Sky realleges and incorporates, by reference herein, the allegations in the previous paragraphs as if fully set forth herein verbatim.

103.    Blue Sky and Yuchi had a valid, enforceable agreement for the manufacture of the Yuchi Grinder, a product different from the Carnivore Grinders under the Cooperation Agreement.

104.    Blue Sky and Bass Pro (formerly Cabela's) had a business relationship and contracts pursuant to which Blue Sky sold the Carnivore Grinders to Bass Pro.

19

105.    Forcome Shanghai and Forcome Hong Kong were aware that Blue Sky later had a business relationship and contracts with Yuchi and Bass Pro for the manufacture and sale of the Yuchi Grinders.

106.    Forcome Shanghai and Forcome Hong Kong filed their patent infringement lawsuit against Yuchi in order to prevent Yuchi from exporting the Yuchi Grinders to the United States for sale to Bass Pro.

107.    The patent that Forcome Shanghai and Forcome Hong Kong claimed Yuchi infringed was an invalid patent.

108.    The patent in question was improperly based on Blue Sky's Carnivore Grinder.

109.    The Shenzhen Intermediate People's Court in China found that Forcome Shanghai and Forcome Hong Kong's patent and action against Yuchi were invalid.

110.    Thus, Forcome Shanghai and Forcome Hong Kong lacked justification to sue Yuchi and prevent the exporting of the Yuchi Grinders.

111.    During the pendency of Forcome Shanghai and Forcome Hong Kong's suit, Yuchi was not permitted to export its grinders to Bass Pro or otherwise fully perform on its agreement with Blue Sky.

112.    As a result of Forcome Shanghai and Forcome Hong Kong's actions, Yuchi breached its contractual obligations to Blue Sky and Bass Pro.

113.    As a result, Bass Pro had empty shelves, particularly during a busy sales time, and lost sales affecting business for both Bass Pro and Blue Sky.

114.    Further, this blockage strained Blue Sky's business relationship with Bass Pro.

115.    In particular, Blue Sky lost favorable delivery status with Bass Pro, which resulted in nearly daily communications regarding delivery and updates on legal status issues in China.

116.    Forcome Shanghai and Forcome Hong Kong's conduct constitutes tortious interference with a contract and/or business relations.

117.    As a result of Forcome Shanghai and Forcome Hong Kong's conduct, Blue Sky has suffered damages in an amount to be determined at trial, but not less than $75,000.00, exclusive of interest.

## COUNT IV
### Violation of the Ohio Trade Secrets Act
### (Against Defendant Forcome Shanghai and Forcome Hong Kong)

118.    Blue Sky realleges and incorporates, by reference herein, the allegations in the previous paragraphs as if fully set forth herein verbatim.

119.    Following execution of and pursuant to the NDA and the Cooperation Agreement, Forcome Shanghai and Forcome Hong Kong obtained access to the designs of the Carnivore Grinders, and Blue Sky's product pricing information for the Carnivore Grinders.

120.    Blue Sky maintained the secrecy of the designs of the Grinders in various ways.

121.    For one, the designs of the Carnivore Grinders were not publicly available, nor were they known outside of Blue Sky, until any patents were granted, requiring public disclosure.

122.    In addition, Blue Sky required that Forcome Shanghai sign both the NDA and Cooperation Agreements, which contained confidentiality provisions, in order to maintain the secrecy of the designs for the Carnivore Grinders.

123.    The Carnivore Grinder designs are economically valuable because they are the blueprints to manufacturing and selling a line of meat grinders.

124.    The Carnivore Grinder designs are thus valuable to any competitors of Blue Sky.

125.    Blue Sky invested significant money into designing the Carnivore Grinders.

126.    It would cost Blue Sky considerable efforts and expense for those outside Blue Sky to acquire and duplicate the information containing in the designs of the Carnivore Grinders.

127.    Thus, the Carnivore Grinders constitute trade secrets owned by Blue Sky under the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code Ann. § 1333.61.

128.    The Carnivore Grinders constituted such trade secrets *until* the time at which relevant information became available following grant of certain patents for the Grinders by the PTO.

129.    Following execution of and pursuant to the NDA and the Cooperation Agreement, Forcome Shanghai and Forcome Hong Kong obtained access to the designs of the Carnivore Grinders, and Blue Sky's product pricing information for the Carnivore Grinders.

130.    Before the grant of such patents, Forcome Shanghai and Forcome Hong Kong misappropriated Blue Sky's trade secrets by filing for its own Chinese patents using the Blue Sky's Carnivore Grinder designs, which lead to information about the Carnivore Grinders, including designs, being publicly available in China while such information remained secret in the United States.

131.    Forcome also misappropriated Blue Sky's trade secrets by using the designs of the Carnivore Grinders to manufacture competing products, which it sold to Blue Sky's competitors.

132.    All of the above-mentioned conduct was done without Blue Sky's authority.

133.    Thus, the above-described conduct constitutes Forcome Shanghai and Forcome Hong Kong's misappropriation of Blue Sky's trade secrets under the OUTSA.

134.    As a result of Forcome Shanghai and Forcome Hong Kong's conduct, Blue Sky has suffered damages in an amount to be determined at trial, but not less than $75,000.00, exclusive of interest.

**COUNT V**
**Violation of the Defend Trade Secrets Act**
**(Against Defendant Forcome Shanghai and Forcome Hong Kong)**

135.   Blue Sky realleges and incorporates, by reference herein, the allegations in the previous paragraphs as if fully set forth herein verbatim.

136.   The designs for Blue Sky's Carnivore Grinders were, until publication pursuant to Blue Sky's valid patents, secret, non-public information.

137.   Blue Sky maintained the secrecy of the designs of the Grinders in various ways.

138.   For one, the designs of the Carnivore Grinders were not publicly available, nor were they known outside of Blue Sky, until any patents were granted, requiring public disclosure.

139.   In addition, Blue Sky required that Forcome Shanghai sign both the NDA and Cooperation Agreements, which contained confidentiality provisions, in order to maintain the secrecy of the designs for the Carnivore Grinders.

140.   The Carnivore Grinder designs derive their value from their secrecy because they are the blueprints to manufacturing and selling a line of meat grinders.

141.   The Carnivore Grinder designs are valuable to any competitors of Blue Sky.

142.   Thus, the Carnivore Grinders constitute trade secrets owned by Blue Sky under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3).

143.   The Carnivore Grinders constituted such trade secrets *until* the time at which relevant information became available following grant of certain patents for the Grinders by the PTO.

144.   Following execution of and pursuant to the NDA and the Cooperation Agreement, Forcome Shanghai and Forcome Hong Kong obtained access to the designs of the Carnivore Grinders, and Blue Sky's product pricing information for the Carnivore Grinders.

145.    Before the grant of such patents, Forcome Shanghai and Forcome Hong Kong misappropriated Blue Sky's trade secrets by filing for its own Chinese patents using the Blue Sky's Carnivore Grinder designs, which lead to information about the Carnivore Grinders, including designs, being publicly available in China while such information remained secret in the United States.

146.    Forcome Shanghai and Forcome Hong Kong also misappropriated Blue Sky's trade secrets by using the designs of the Carnivore Grinders to manufacture competing products, which it sold to Blue Sky's competitors.

147.    All of the above-mentioned conduct was done without Blue Sky's authority.

148.    Thus, the above-described conduct constitutes Forcome Shanghai and Forcome Hong Kong's misappropriation of Blue Sky's trade secrets under the DTSA.

149.    As a result of Forcome Shanghai and Forcome Hong Kong's conduct, Blue Sky has suffered damages in an amount to be determined at trial, but not less than $75,000.00, exclusive of interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Blue Sky respectfully prays for a judgment against Defendants as follows:

A.      As to Count I, damages in an amount to be determined at trial, but not less than $75,000.00;

B.      As to Count II, damages in an amount to be determined at trial, but not less than $75,000.00;

C.      As to Count III, damages in an amount to be determined at trial, but not less than $75,000.00;

D.      As to Count IV, damages in an amount to be determined at trial, but not less than $75,000.00;

E.      As to Count V, damages in an amount to be determined at trial, but not less than $75,000.00;

F.      An award of costs for this action together with Blue Sky's reasonable attorneys' fees;

G.      An award of pre-judgment and post-judgment interest on its damages, as allowed by law; and

H.      Any other additional and further relief that the Court may deem just and proper under the circumstances.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Blue Sky Innovation Group, Inc. hereby request a trial by jury of all issues so triable.

Dated:  February 12, 2024

Respectfully Submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Kevin M. Capuzzi*
Kevin M. Capuzzi (#5462)
Noelle B. Torrice (#5957)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Tel: (302) 442-7010
kcapuzzi@beneschlaw.com
ntorrice@beneschlaw.com

Eric Larson Zalud (admitted *pro hac vice*)
Michael Weinstein (admitted *pro hac vice*)
Deana S. Stein (admitted *pro hac vice*)
Lidia C. Mowad (admitted *pro hac vice*)
Alayna Bridgett (admitted *pro hac vice*)
200 Public Square, Suite 2300
Cleveland, OH 44114
Tel: (216) 363-4500
ezalud@beneschlaw.com
mweinstein@beneschlaw.com
dstein@beneschlaw.com
lmowad@beneschlaw.com
abridgett@beneschlaw.com

*Attorneys for Plaintiff Blue Sky Innovation Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2024, a copy of the foregoing *Second Amended Complaint* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Kevin M. Capuzzi*
Kevin M. Capuzzi (#5462)

*Attorney for Plaintiff Blue Sky Innovation Group, Inc.*